IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | NO. 10-7051 |
| STUART L. THOMAS, et al., | : | |
| Defendants. | : | |

**OPINION**

**Slomsky, J.**                                                                                                                  **July 26, 2011**

**I.     INTRODUCTION**

On June 23, 2011, Plaintiff J & J Sports Productions, Inc. filed a Motion for Default Judgment in this case. (Doc. No. 7.) The following day, the Court issued an Order scheduling a hearing on the Motion and directing that all parties appear at the hearing "to show cause as to why a default judgment should not be entered against Defendants Stuart L. Thomas and Bustleton Famous of Holland, Inc. and to assess damages." (Doc. No. 8.) The hearing was held on July 13, 2011. Despite being served with notice of the hearing (see Doc. No. 9), and being afforded almost three weeks to file a response, Defendants failed to appear at the hearing or otherwise respond to the Motion.

During the hearing, the Court determined that the unchallenged factual allegations contained in the Complaint established a cause of action under 47 U.S.C. § 605.[1] Further, the

---

[1] Title 47, United States Code, Section 605 provides in relevant part:

> (a) . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any

Court explained that consideration of the Poulis[2] factors supported the entry of default judgment against Defendants.[3] The Court also determined that under 47 U.S.C. §§ 605(e)(3)(C)(i)(II)[4] and 605(e)(3)(C)(ii),[5] Plaintiff was entitled to damages in the amount of $27,600, representing $9,200 in statutory damages and $18,400 in enhanced damages. Since at the time of the hearing counsel

---

> interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

[2] Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863 (3d Cir. 1984).

[3] The Court considered the following factors:

(1) the extent of the party's personal responsibility, (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery, (3) a history of dilatoriness, (4) whether the conduct of the party or the attorney was willful or in bad faith, (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions, and (6) the meritoriousness of the claim or defense.

Poulis, 747 F.2d at 868.

[4] Section 605(e)(3)(C)(i)(II) provides that "the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just."

[5] Section 605(e)(3)(C)(ii) provides: "In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section."

for Plaintiff had not yet submitted evidence on fees and costs incurred in the litigation, the Court was unable to determine the appropriate amount of attorney's fees and costs to award.

Following the hearing, the Court granted Plaintiff's Motion for Default Judgment. (Doc. No. 11.) Counsel for Plaintiff then submitted evidence of fees and costs incurred in litigating the case. (Doc. No. 15.) The Court will now consider this evidence to determine the amount of reasonable attorney's fees and costs that should be awarded to counsel for Plaintiff. For reasons that follow, the Court will award attorney's fees and costs to Plaintiff in the amount of $1,518.73. The Court will enter judgment in favor of Plaintiff and against Defendants in the amount of $29,118.73, which includes $27,600 in damages and $1,518.73 in attorney's fees and costs.

## II. FACTUAL BACKGROUND

On Saturday, December 6, 2008, a Welterweight Championship fight was held between Oscar De La Hoya and Manny Pacquiao. (Doc. No. 7.) Plaintiff was granted the exclusive nationwide commercial distribution right to broadcast this fight. (Doc. No. 1 ¶ 9.) The broadcast was titled: *"The Dream Match": Oscar De La Hoya v. Manny Pacquiao, Welterweight Championship Fight Program* (the "Program"). (Id.) The exclusive right to the Program included all under-card bouts and fight commentary. (Id.)

Plaintiff sold sub-licensing rights to the Program to casinos, racetracks, bars, restaurants, and nightclubs. (Id. ¶ 10.) Due to the potential for rampant piracy of the broadcast, Plaintiff hired auditors and investigators to detect and identify any illegal interception of the boradcast. (Doc. No. 7-4 ¶¶ 4-6.) Plaintiff provided its auditors and investigators with a list of customers who paid the license fee to broadcast the Program. (Id.) Defendant Bar & Grill did not pay the licensing fee for the Program, but was identified by investigators as having obtained access to the

Program.  (Id. ¶ 7.)

At approximately 10:00 p.m. on the evening the Program aired, Jonathan Sherno, an investigator hired by Plaintiff, went to Defendant Bar & Grill.  (Doc. No. 7-3.)  He paid a $5.00 cover charge to enter the Bar.  (Id.)  Once inside Mr. Sherno observed that the Program was being shown on three televisions located behind the bar.  (Id.)  The capacity of Defendant Bar & Grill is approximately fifty people.  (Id.)  Mr. Sherno counted the number of patrons at the Bar on three occasions.  The first time there were seventeen patrons, the second time there were twenty-three patrons, and the third time there were thirty or more patrons.  (Id.)

On December 3, 2010, Plaintiff filed the Complaint alleging that Defendants violated federal law in broadcasting the Program without a license.  (Doc. No. 1.)  On February 3, 2011, Plaintiff served Defendants. (Doc. Nos. 4, 5.)  On February 22, 2011, Plaintiff filed proof of service with the Court.  (Id.)  Defendants did not file an Answer to the Complaint within the time provided by the Federal Rules of Civil Procedure.  (Doc. No 7-1.)  On June 8, 2011, Plaintiff filed a Request for Entry of Default against Defendants.  (Doc. No. 6.)  On June 8, 2011, the Clerk entered default.

On June 23, 2011, Plaintiff filed a Motion for Default Judgment.  (Doc. No. 7.)  Defendants were served with the Motion.  (Doc. No. 7-1.)  As noted above, on June 24, 2011, the Court filed an Order scheduling a Show Cause Hearing on the Motion.  (Doc. No. 8.)  The Court ordered that Plaintiff serve Defendants in accordance with Federal Rule of Civil Procedure 4 and file Proof of Service with the Court.  (Id.)  On June 27, 2011, Plaintiff served Defendants with a copy of the Show Cause Order and filed Proof of Service with the Court.  (Doc. No. 9.)

As stated above, the Court held a hearing on the Motion on July 13, 2011.  Following the

hearing, the Court granted the Motion for Default Judgment.  (Doc. No. 11.)  On July 18, 2011, counsel for Plaintiff filed a Declaration Regarding Attorney's Fees and Costs.  (Doc. No. 15.)

**III.   DISCUSSION**

Having determined at the hearing that the unchallenged factual allegations contained in the Complaint established a cause of action under 47 U.S.C. § 605, the Court next will determine the amount of reasonable attorney's fees and costs to which Plaintiff is entitled under 47 U.S.C. § 605(e)(3)(B)(iii).[6]

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  The calculation provides an objective basis on which to make an initial estimate of the value of the lawyer's services.

Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  This calculation produces what is referred to as the lodestar amount.  Damian J. v. Sch. Dist. of Phila., 358 F. App'x 333, 334 (3d Cir. 2009).  To determine the number of hours reasonably expended on the litigation, the Third Circuit directs that the Court exclude any hours deemed "excessive, redundant, or otherwise unnecessary."  McKenna v. City of Philadelphia, 582 F.3d 447, 455 (3d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. at 434).

Here, Plaintiff requests $508.73 in attorney's fees.  (Doc. No. 15 ¶ 11.)  The amount

---

[6] Title 47, United States Code, Section 605(e)(3)(B)(iii) provides that upon a finding of a violation of Section 605(a) a court may, in addition to awarding damages pursuant to Section 605(e)(3)(C), "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party."  At the hearing the Court found that Plaintiff established a violation of Section 605(a).  The Court then determined that Plaintiff was entitled to $27,600 in damages under Section 605(e)(3)(C).  The Court now considers the amount of reasonable attorney's fees to which Plaintiff is entitled under Section 605(e)(3)(B)(iii).

requested is based on 5.058 hours of work performed by counsel for Plaintiff.[7] (Id. ¶¶ 9,11.) The work done includes preparation and filing of the Complaint, the Request for Entry of Default, and the Motion for Default Judgment. Given the necessity of performing these tasks and the relatively short time in which the tasks were completed, the Court finds that these hours are not "excessive, redundant, or otherwise unnecessary" and were reasonably expended on the litigation.

The amount requested is based on the hourly rates of Attorney Thomas P. Riley, his administrative assistant, and paralegal, which are $450 per hour, $75 per hour, and $150 per hour respectively. (Id. ¶ 11.) To determine a reasonable hourly rate, courts "consistently look[] to the marketplace as [a] guide to what is 'reasonable.'" Missouri v. Jenkins, 491 U.S. 274, 285 (1989). Counsel for Plaintiff certifies that the "rates for legal, administrative, and paralegal time are well within the guidelines of the prevailing market rates within Los Angeles County," where he practices. (Doc. No. 15 ¶ 8.)[8] The Court agrees that $450 hourly rate is reasonable based on

---

[7] The hourly services billed by Plaintiff were performed by Attorney Thomas P. Riley (.225 hours), and his administrative assistant (4.333 hours) and paralegal (.5 hours).

[8] Plaintiff submits the Laffey Matrix (the "Matrix") as an exhibit to Declaration. (Doc. No. 15, Ex. 2.). The Matrix provides reasonable hourly rates for paralegals and attorneys based on years of experience. Its name is derived from the case in which the Matrix was first used, Laffey v. Nw. Airlines, 572 F. Supp. 354 (D.D.C. 1983), aff'd 746 F.2d 4 (D.C. Cir. 1984). Initially the Matrix was used to determine reasonable hourly rates in the Washington, DC area. It has since been used by courts to determine reasonably hourly rates in other areas, adjusting the rates in the Matrix based on locality. See, e.g., Bond v. Ferguson Enterprises, Inc., No. 09-1662, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011); Theme Promotions, Inc. v. News America Marketing FSI, Inc., 731 F. Supp. 2d 937, 949 (N.D. Cal. 2010). Courts presiding in the Central District of California disagree whether the Matrix should be used to determine the reasonable hourly rate for an attorney practicing in the Los Angeles area, where counsel for Plaintiff practices. Compare Fitzgerald v. City of Los Angeles, No. 03-1876, 2009 WL 960825, at *11 (C.D. Cal. Apr. 7, 2009) (declining to use the Matrix) with Fernandez v. Victoria Secret Stores, LLC, No. 06-4149, 2008 WL 8150856, at *14 (C.D. Cal. July 21, 2008) (using the Matrix to calculate a reasonable hourly rate). Here, the Court finds that the rate charged by Mr. Riley is

Mr. Riley's 18 years of legal experience. See <u>Nadarajah v. Holder</u>, 569 F.3d 906, 917 (9th Cir. 2009) (citing <u>Comite de Jornaleros de Glendale v. City of Glendale</u>, CV-04-3251 (C.D. Cal. Aug. 19, 2005)) (recognizing that $450 was a reasonable hourly rate for an attorney practicing in the Los Angeles area with 15 years of experience).

The rates charged by Mr. Riley's administrative assistant, $75 per hour, and his paralegal, $150 per hour, are also reasonable. See <u>League of Residential Neighborhood Advocates v. City of Los Angeles</u>, 633 F. Supp. 2d 1119, 1133 (C.D. Cal. 2009) (finding that the $115 hourly rate charged by an administrative assistant and the $145 hourly rate charged by a paralegal were reasonable).

Having determined that both the hours expended and the rate charged are reasonable, the Court will award attorney's fees for the full amount requested, $508.73. Plaintiff also requests $1,010 in costs. This amount includes investigative costs, payment of the filing fee, and a service of process charge. Each cost was necessary and reasonably expended on the litigation. Accordingly, the Court will award $1,010 in costs.

**IV.     CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff's request for attorney's fees and costs in the amount of $1,518.73 is reasonable. The Court will enter judgment in favor of Plaintiff and against Defendants in the amount of $29,118.73, representing $27,600 in statutory and enhanced damages and $1,518.73 in attorney's fees and costs.

An appropriate Order follows.

---

reasonable by comparing it to those rates found reasonable in analogous cases without reference to the Matrix. However, the Court recognizes that the rate charged by Mr. Riley is below the rate provided in the Matrix. Thus, use of the Matrix would not alter the Court's conclusion that Mr. Riley's hourly rate is reasonable.